IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


EDWARD J. PADEN,                          )
                                          )
                                          )
                    Plaintiff             )          Civil No.07-143-AA
                                          )
            v.                            )          OPINION AND
                                          )          ORDER
MICHAEL J. ASTRUE,                        )
Commissioner of Social Security,          )
                                          )
                    Defendant             )


DAVID LOWRY

        Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

STEPHANIE R. MARTZ
Special Assistant U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

        Attorneys for Defendant

AIKEN, District Judge:

Plaintiff Edward Paden ("Paden") seeks judicial review of the Social Security

Commissioner's final decisions ceasing his eligibility for Childhood Disability Insurance Benefits

and denying his subsequent application for the same benefits under Title II of the Social Security

Act (the "Act"). This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The

Commissioner's decision should be REVERSED and REMANDED for the reasons below.

## BACKGROUND

This case has a long and complex procedural history. Paden was awarded child disability

insurance benefits for a personality disorder and borderline intellectual functioning in July 1993.

Tr. 32, 45.[1] The Commissioner found that Paden's disability ceased in May 2000. *Id.* Paden

appealed that decision and a hearing was held before an ALJ on December 31, 2001. Tr. 593.

The ALJ found Paden not disabled on January 10, 2002. Tr. 32, 586. This court affirmed that

decision on October 30, 2002. Tr. 44-48. On February 27, 2004, the Ninth Circuit affirmed in

part and reversed in part this court's October 2002 decision and remanded the case for further

proceedings. Tr. 455-60. The Ninth Circuit ordered the ALJ to reconsider the opinion of an

examining psychologist and to reformulate his questions to the vocational expert. *Id.*

While these proceedings were pending, Paden filed another application for adult child

benefits on February 21, 2002, alleging disability since January 11, 2002. Tr. 67-9. The

Commissioner denied that application, and Paden appealed. On March 20, 2003, a second

hearing was held before an ALJ. Tr. 23. The ALJ combined the pending cessation appeal and

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative
record filed with the Commissioner's Answer on July 12, 2007 (docket #13).

the February 2002 application and again found Paden ineligible for benefits on April 15, 2003.

Tr. 17-18.  Paden subsequently appealed that decision to this court, and this court remanded the

case a second time for further proceedings on May 11, 2004.  Tr. 462.  A third ALJ hearing was

held on December 2, 2004, pursuant to this court's May 2004 remand order (tr. 543), and the ALJ

found Paden not disabled on April 15, 2005.  Tr. 441.

Paden appealed that decision to this court, and this court again remanded the case back to

the ALJ on April 12, 2006.  Tr. 1065.  A fourth ALJ hearing was held on August 2, 2006 (tr.

1086), and the ALJ once again found Paden not disabled on November 27, 2006.  Tr. 1002.

In summary, Paden's case has been pending eight years.  He received four ALJ decisions.

This court affirmed Paden's case once and was reversed by the Ninth Circuit.  This court

subsequently twice remanded Paden's case for further proceedings.  This court now considers

Paden's benefit eligibility a fourth time.

## DISABILITY ANALYSIS

The Commissioner has established procedures for evaluating initial disability claims and

evaluating disability cessation.

### A.    Initial Disability Determinations

Children may be entitled to Title II disability insurance benefits based upon the earnings

record of an insured parent.  20 C.F.R. § 404.350(a).  In construing an initial disability

determination under Title II, the Commissioner engages in a sequential process encompassing

between one and five steps.  20 C.F.R. § 404.1520, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity.

If he is, the claimant is not disabled.  20 C.F.R. § 404.1520(a)(4)(i).  At step two, the ALJ

determines if the claimant has "a severe medically determinable physical or mental impairment"

that meets the twelve month duration requirement.  20 C.F.R. § 404.1509, 404.1520(a)(4)(ii).  If

the claimant does not have such a severe impairment, he is not disabled.  *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a

"listed" impairment in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is

determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other

relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The

claimant's RFC is an assessment of work-related activities the claimant may still perform on a

regular and continuing basis, despite limitations imposed by his impairments.  20 C.F.R. §

404.1520(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant

work at step four.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant can perform his past relevant

work, he is not disabled.  If the ALJ finds that the claimant's RFC precludes performance of his

past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing

work existing in the national economy.  *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d

1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f).  If the claimant cannot

perform such work, he is disabled.  *Id.*

The initial burden of establishing disability rests upon the claimant.  *Tackett*, 180 F.3d at

1098.  If the process reaches the fifth step, the burden shifts to the Commissioner to show that

"the claimant can perform some other work that exists in the national economy, taking into

consideration the claimant's residual functional capacity, age, education, and work experience."

*Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§

404.1520(g), 404.1566.

### B.    Disability Cessation Determinations

In order to cease an existing benefit entitlement, the Commissioner must show that a

claimant has experienced "medical improvement" since the decision granting the claimant

disability benefits.  20 C.F.R. § 404.1594.  In determining improvement, the Commissioner

engages in a sequential process this time encompassing between one and eight steps.

At step one, the ALJ determines if the claimant is performing substantial gainful activity;

if he is, he is not disabled.  20 C.F.R. § 404.1594(f)(1). At step two, the ALJ determines if the

claimant's impairment meets or equals a listing.  20 C.F.R. § 404.1594(f)(2).  As above, if the

impairment meets or equals a listing the claimant remains disabled.  *Id.*  At step three, the ALJ

must consider whether the claimant has experienced medical improvement.  20 C.F.R. §

494.994(f)(3).  If the claimant has not experienced improvement, he remains disabled.  *Id.*

If adjudication proceeds beyond step two, the ALJ must evaluate the claimant's RFC,

described above.  The ALJ then determines if the claimant's medical improvement is related to

his ability to do work activity.  20 C.F.R. § 404.1594(f)(4-6).  If no change has occurred in the

claimant's RFC since the comparison point decision, he remains disabled.  *Id.*

At step five, the ALJ considers whether certain exceptions apply to his finding.  20 C.F.R.

§ 404.1594(f)(5).   These exceptions consider new diagnostic techniques, an erroneous previous decision, fraud, a claimant's failure to co-operate with the agency, or failure to follow prescribed treatment.  apply.  20 C.F.R. § 404.1594(d) and (e).  If these exceptions do not apply, proceedings continue.

If proceedings reach step six, the ALJ must determine if the claimant's combined current impairments are severe.  20 C.F.R. § 404.1594(f)(6).  When the evidence shows that all current impairments in combination do not significantly limit a claimant's ability to do work, the claimant is no longer considered disabled. *Id.*

At step seven, the ALJ assess the claimant's current ability to do substantial gainful activity regarding work he has performed in the past.  20 C.F.R. § 404.1594(f)(7).  If the claimant is able to perform such SGA, he is not disabled.  At step eight, the ALJ finally considers whether the claimant may perform other work in the national economy.  20 C.F.R. §404.1594(f)(8).  If the claimant is found able to perform such work, the disability has ceased.  *Id.*

As in disability determination cases, the initial burden of establishing disability rests upon the claimant. *Tidwell v. Apfel*, 161 F.3d 599,601 (9th Cir. 1998); *Patti v. Schweiker*, 669 F.2d 582, 587 (9th Cir. 1982).   However, for purposes of determining if disability has ended, the claimant is also entitled to a presumption of continuing disability, requiring the Commissioner to produce rebuttal evidence. *Patti*, 669 F.2d at 586-87.  This presumption of continuing disability does not affect the ultimate burden of persuasion, which remains on the claimant, to prove entitlement to disability insurance benefits. *Tidwell*, 161 F.3d at 601; *Patti*, 669 F.2d at 587.

The ALJ consolidated both of Paden's appeals on April 15, 2003, and concurrently

evaluated the evidence for both matters on that date and in the November 2006 decision under review. Tr.17-18, 1002-12. This court therefore reviews the ALJ's evaluation of the evidence as it pertains to both standards.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Paden contends that the ALJ erroneously evaluated his testimony, the medical evidence, and that of lay witnesses. Paden subsequently contends the ALJ made an inaccurate residual functional capacity assessment and, consequently, made an erroneous finding that he was not disabled.

## I.    Credibility

The ALJ's first decision, issued in January 2002, found Paden "partially credible." Tr. 37.

Paden challenged this finding and this court found it "adequately addressed" in October 2002.

Tr. 46.  Paden again challenged the ALJ's January 2002 credibility finding in his immediate

appeal to the Ninth Circuit.  Br. of Petitioner-Appellant at 22, *Paden v. Barnhart*, 92 Fed. Appx.

465 (9th Cir. Feb. 27, 2004) (2003 WL 22593593 at *22).  The Ninth Circuit did not address the

argument, and so affirmed the ALJ's credibility finding *sub silento.  Paden*, 92 Fed. Appx. 465

(2004 WL 376657), tr. 455-60.  Paden did not request reconsideration of that affirmation.  This

court cannot now depart from the Ninth Circuit's 2004 ruling affirming the ALJ's credibility

decision.

## II.    Medical Evidence

### A.    Standard

The ALJ must ordinarily accord a treating physician's opinion greater weight than that of

an examining physician's opinion, and in turn grant greater weight to an examining physician's

opinion than to that of a reviewing physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

The ALJ must give specific, legitimate reasons supported by substantial evidence for rejecting a

controverted opinion from a treating or examining physician and "clear and convincing reasons"

for rejecting an uncontroverted opinion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir.

2005).  A reviewing physician's opinion may not constitute substantial evidence justifying

rejection of a treating or examining physician's opinion unless it is  "supported by other evidence

of the record and . . . consistent with it."  *Lester*, 81 F.3d at 838, *Morgan v. Comm'r*, 169 F.3d

595, 600 (9th Cir. 1999) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

///

B.    **Examining Physicians**

a.    **Dr. Gretsch**

Examining psychologist Dr. Gretsch conducted a clinical examination and testing, submitting a report to the record dated March 27, 2002.  Tr. 383-388.  The ALJ's April 2003 and April 2005 opinions omitted discussion of this report.   Tr. 17-18, 441-50.  In April 2006 this court ordered the ALJ to properly consider Dr. Gretsch's opinion.  Tr. 1065.

The ALJ discussed Dr. Gretsch's March 2002 report in his November 2006 decision, currently under review.  Tr. 1007-08.  The ALJ first noted that Paden told Dr. Gretsch that he had previously been diagnosed with a personality disorder and twice discounted Dr. Gretsch's report because Paden "did not remember who diagnosed him with a personality disorder or what kind of personality disorder it was . . . Dr. Gretsch seemed to take him at his word that he had this diagnosis."  Tr. 1007, 1006.

The record shows that Paden received various pathological personality diagnoses between 1986 (at age 11) and 2004, when the record closes.   These diagnostic labels include "emotional disturbance" and "severe emotional disturbance" (tr. 170, 172, 276, 809, 838), "oppositional behavior disorder" (tr. 274) "violent outbursts" (tr. 280), "conduct disorder" (tr. 738, 856), "dementia" (tr. 746), attention-deficit disorder (tr. 762), and "anti-social personality traits" (tr. 878).  The ALJ's inference that a claimant with borderline intellectual functioning deliberately misrepresented this history as a personality disorder strains credibility and is not sustained.

The ALJ also noted that Paden reported to Dr. Gretsch that "he had never been employed and had always relied on SSI as a source of income, however, this statement is wholly false as

even the claimant testified that he attempted to work at times." Tr. 1007. The record shows that Paden never achieved "substantial gainful activity" level earnings prior to Dr. Gretsch's March 2002 evaluation. Tr. 1067-82. Instead, the record shows that Paden enrolled in a Portland Public Schools[2] work training program between October 1992 and February 1993, which resulted in one-time annual earnings total of $387.00. Tr. 763-87, 1080. Furthermore, claimants are not penalized for unsuccessful work attempts. *Lingenfelter*, 504 F.3d at 1036-37. The ALJ's rejection of Dr. Gretsch's report by citation to Paden's "wholly false" reports of his work history is not based upon the record and does not apply the proper legal standards. This finding is not sustained.

The ALJ finally rejected Dr. Gretsch's clinical testing results because Paden's intellectual functioning scores do "not indicate an inability to learn, attend, and concentrate." Tr. 1007. Dr. Gretsch did not suggest Paden has such inabilities due to his intellectual functioning scores; Dr. Gretsch suggested Paden's limitations arise from the combined effect of Paden's intellectual functioning scores, his personality disorder, and clinically observed behavior. Tr. 388. The ALJ's analysis does not support rejection of Dr. Gretsch's clinical test results and is not sustained.

The ALJ finally concluded that Dr. Gretsch's "diagnoses and findings appear totally based on the claimant's self-report and not from a review of the existing evidence." Tr. 1007. This is an erroneous conclusion for the reasons above and is not sustained.

### c.    Dr. Barry

Examining psychologist Dr. Barry examined and evaluated Paden on July 14, 2004. Tr.

---

[2]The court also notes that work performed by a student working for a school is not considered employment. 20 C.F.R. § 404.1028.

516-22.  The ALJ addressed Dr. Barry's opinion in his April 2005 and November 2006 decisions.
Tr. 445-46, 1007-08.

This court presently reviews the ALJ's November 2006 findings.  The ALJ concluded
"the opinions by Dr. Barry are given little or no weight as Dr. Barry appears to have relied solely
on the representations made by the claimant."  Tr. 1008.  The ALJ noted that Dr. Barry's review
of the record was limited to notes provided by Paden's counsel, and that Paden "has had no
mental health treatment and no prescriptions of psychotropic medications in the three years since
the last hearing . . . consequently, Dr. Barry's evaluation is given little or no weight."  Tr. 1008.

Both prongs of this analysis are flawed.  The ALJ may not reject a medical source opinion
simply because it was procured by claimant's counsel.  *Reddick v. Chater*, 157 F.3d 715, 726 (9th
Cir. 1998(citing *Lester*, 81 F.3d at 832)).  Furthermore, the ALJ may not reject a physician's
opinion because a mentally ill claimant failed to seek earlier treatment.  *Nguyen v. Chater*, 100
F.3d 1462, 1465 (citing *Blakenship v. Bowen*, 874 F.2d 116, 1124 (6th Cir. 1989)).  The ALJ's
review of Dr. Barry's opinion is not sustained.

C.    **Reviewing Physicians**

The Commissioner contends that the ALJ appropriately evaluated DDS reviewing
physicians because he gave greater weight to examining psychiatrist Dr. Williams than to the
reviewing physicians.  Def. Br. 20-21.  This submission misconstrues the ALJ's analysis: the ALJ
here rejected the additional opinions of Drs. Gretsch and Barry, discussed above, in favor of the
non-examining reviewing physicians.[3]  Tr. 1008.  Such analysis is appropriate only when the

_____

[3]The ALJ furthermore failed to note that reviewing psychologist Dr. Wimmens credited
Paden's personality disorder diagnosis on June 3, 2002.  Tr.  404.

reviewing physicians' opinions are consistent with the record as a whole. *Lester*, 81 F.3d at 830, *see also Nguyen*, 100 F.3d at 1465 (holding that "where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as the basis for the rejection of an examining physician's conclusions."). Absent such findings, a reviewing physician's opinion may not constitute substantial evidence justifying rejection of an examining physician's opinion. *Lester*, 81 F.3d at 831. Here, the ALJ created the required "consistency" by rejecting contradictory opinions. This analysis is not sustained.

## III.    Lay Witness Testimony

The ALJ found testimony submitted by Paden's and adoptive mother (and grandmother), Maxine Paden, not credible regarding Paden's mental impairments. Tr. 1007. The ALJ predicated this finding upon his prior finding that the medical evidence did not support Paden's mental impairment symptom testimony. *Id.* As shown, the ALJ improperly assessed the medical evidence regarding Paden's mental health. While the ALJ may reject lay witness testimony inconsistent with the medical evidence, *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001), this reasoning no longer suffices. The ALJ's analysis of Maxine Paden's testimony is predicated upon an improper analysis of the medical evidence and is not sustained.

## REMAND

_____The ALJ erroneously omitted the assessments of Drs. Gretsch and Barry and consequently erroneously rejected Maxine Paden's testimony. The ALJ's findings that Paden experienced medical improvement (regarding the Commissioner's May 2000 cessation determination) and was not disabled (regarding Paden's February 2002 application) is not based

upon the record.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman,* 211 F.3d at 1178 (quoting *Smolen v. Chater,* 80 F.3d 1273, 1292 (9th Cir. 1996). The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)); *Nguyen*, 100 F.3d at 1466-67; *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991).

Correction of the ALJ's errors resolves all issues and thus compels a determination of disability, demonstrating that further proceedings would serve no useful purpose. Here, the ALJ erred in repeatedly rejecting the opinions of Drs. Gretsch and Barry. If credited, the limitations

described in their opinions establish disability.  Specifically, both show that Paden suffered from

personality disorders and borderline intellectual functioning throughout the period in question.

Tr. 388, 522.

Crediting this testimony allows the court to credit the observations of lay witness Maxine

Paden because her observations are consistent with the medical record and establish work-related

limitations.  *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000).  Maxine Paden submitted

statements to the record and several examining physicians and psychologists.  These statements

consistently describe Paden's emotional outbursts, occasional violence and threats of violence,

learning difficulties, illiteracy, inability to concentrate, and depression.  Tr. 221, 268, 274, 281

488, 491, 518.  The vocational expert subsequently testified an individual with these limitations

would be unable to perform work in the national economy at step five.  Tr. 1096-96.

Because there are sufficient findings to establish disability if the improperly rejected

evidence is credited as true, this court exercises its discretion and remands for an award of

benefits.

## **ORDER**

For these reasons, this Court REVERSES the Commissioner's final decision and

REMANDS this matter pursuant to sentence four of 42 U.S.C. § 405(g) for calculation and

award of benefits consistent with this opinion.

///

///

///

14 - OPINION AND ORDER

IT IS SO ORDERED.

Dated this  26  day of February, 2008.

/s/ Ann Aiken
Ann Aiken
United States District Judge

15 - OPINION AND ORDER